1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    LARRY WILLIAM CORTINAS,                    No.  2:23-CV-0388-WBS-DMC-P

12                    Plaintiff,

13          v.                                    ORDER

14    BIVIN et al.,

15                    Defendants.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Plaintiff's first amended complaint, ECF No. 16.

19          The Court is required to screen complaints brought by prisoners seeking relief

20    against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21    § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was

22    initiated even if the litigant was subsequently released from custody.  See Olivas v. Nevada ex rel.

23    Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or

24    portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

25    be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See

26    28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that

27    complaints contain a ". . . short and plain statement of the claim showing that the pleader is

28    entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

                                                  1

1  concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to

2  Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice

3  of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121,

4  1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity

5  overt acts by specific defendants which support the claims, vague and conclusory allegations fail

6  to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening

7  required by law when the allegations are vague and conclusory.

8

9                              **I.  PLAINTIFF'S ALLEGATIONS**

10         Plaintiff continues to name the following as defendants in his first amended

11  complaint: (1) Correctional Officer – Bivin; (2) Correctional Sergeant – Rios; (3) Correctional

12  Officer – Reynolds; (4) Correctional Officer Dhillion; (5) Warden – Lynch; and (6) Associate

13  Warden – Stewart.[1]  See ECF No. 16. All defendants are alleged to have been prison officials at

14  California State Prison – Sacramento in 2020 and 2021.  See id.  Plaintiff now presents four

15  claims for relief.[2]

16         Claim I

17         On September 21, 2021, Plaintiff was on his way to a mandatory state-ordered

18  court appearance. See id. at 4. Plaintiff was in his wheelchair when Sergeant Rios ordered him out

19  of the wheelchair. See id.  Plaintiff tried to explain that he could not walk far and needed his

20  wheelchair.  See id.  However, Plaintiff alleges these efforts went unheeded.  See id. Plaintiff

21  claims that both Bivin and Rios knew the wheelchair was issued to Plaintiff by the state due to

22  lumbar and cervical disc damage. See id.  Plaintiff claims that Bivin and Rios saw Plaintiff using

23  the wheelchair for the entire year of 2021. See id.

24  / / /

25  / / /

26  / / /

27

28

---

[1]   Lynch was not named in the original complaint.
[2]   The original complaint presented three claims for relief.

1    Plaintiff claims that each week Bivin would inspect the wheelchair to ensure it was

2    working properly.  See id. Likewise, Sergeant Rios was aware that Plaintiff had opened several

3    complaints over not being provided a pusher for his wheelchair. See id. On the day of the

4    incident, Sergeant Rios ordered the inmate who was pushing Plaintiff in his wheelchair to his

5    court hearing back to his cell. See id.  He then told Plaintiff that he could either walk to court or

6    refuse court. See id. Plaintiff claims he did his best to walk and arrived one hour late. See id.

7    There, Correctional Officer Reynolds asked Plaintiff the location of his wheelchair.  See id.

8    Plaintiff claims the wheelchair was a medically necessary device, and he was given no

9    explanation why it was taken away.  See id. As a result, he had to walk 100 yards to get to court.

10   See id. He claims he fell on his way back and was transported to the hospital. See id.

11   Plaintiff alleges these facts show a violation of his rights under the Americans with

12   Disabilities Act (ADA).  See id.

13   Claim II

14   Plaintiff next claims that on the same day – September 21, 2021 – Correctional

15   Officer Reynolds refused to provide Plaintiff with a wheelchair after several requests even though

16   he knew of his need for a wheelchair. See id. at 5. Plaintiff claims that Reynolds was the officer

17   who previously transported him to see the neurosurgeon and he was present during his exam and

18   discussion of his lumbar and cervical spine damage. See id. Plaintiff claims that Reynolds also

19   knew that the wheelchair was a state-issued medical device necessary for safe mobility. See id.

20   Plaintiff claims that Sergeant Reynolds told him that Sergeant Rios said "no" to his wheelchair

21   request and that he should "man up" and walk back. Id. As alleged above, Plaintiff attempted to

22   walk back and fell, sustaining injuries requiring transportation to the hospital.  See id.  As he was

23   placed on a gurney, Plaintiff was dropped on his head by correctional officers who carried him

24   into the elevator, among them Officer Reynolds. See id.

25   Plaintiff alleges these facts give rise to a claim under the Eighth Amendment.  See

26   id.

27   / / /

28   / / /

3

1   <u>Claim III</u>

2          Plaintiff claims that, from September 2020 until December 2021, he wrote Warden

3   Lynch and Associate Warden Stewart about ongoing reprisals he was receiving due to filing

4   grievances against staff and medical personnel at the prison. <u>See id.</u> at 6. The grievances were

5   made against Officer Dhillion, Sergeant Rios, and Correctional Officer Bivin for ignoring his

6   complaints for the need of medical care. <u>See id.</u> Additionally, Plaintiff made complaints for not

7   being given a wheelchair pusher, lacking access to wheelchair ramps once they were removed

8   from Unit 8 Section B, and the need for increase in shower time in excess of five minutes and a

9   shower chair. <u>See id.</u> Over the period of time that Plaintiff made these complaints, he claims he

10  was harassed for contacting San Quentin Prison Law Office and threatened at the hospital by

11  unknown correctional officers. <u>See id.</u>

12         On September 21, 2021, while at the hospital, these unknown correctional officers

13  took him out of sight and informed him that his property would be destroyed if he accepted

14  medical treatment. <u>See id.</u> Plaintiff claims Doctor Wilson witnessed the encounter.  <u>See id.</u>

15  Plaintiff feared that their threats were serious, so he returned to the prison. <u>See id.</u>  Plaintiff

16  claims he went on three hunger strikes to draw attention to the situation.  <u>See id.</u> He also claims

17  that he wrote to Governor Newsom, but the letters were returned to the prison. <u>See id.</u>

18         Plaintiff alleges these facts give rise to a retaliation claim under the First

19  Amendment.  <u>See id.</u>

20         <u>Claim IV</u>

21         Plaintiff claims that on or around November 10, 2021, Correction Officer Dhillion

22  used the power door as a weapon against him. <u>See id.</u> at 7. Plaintiff claims that Officer Dhillion

23  shut the door on him as he was exiting his cell in Unit 8 Section C to obtain his medication,

24  crushing his shoulder and causing him to fall to the floor. <u>See id.</u> Plaintiff claims that when he

25  tried to file a staff use-of-force complaint, he was denied by Sergeant Rios.  <u>See id.</u> Plaintiff also

26  approached Associate Warden Stewart regarding the situation but was told to "forget it," and that

27  Stewart refused to alert the investigative unit so that Plaintiff could make a video documenting his

28  injuries. <u>Id.</u> Plaintiff claims that both of his shoulders turned black and blue as a result of the

                                                4

injury. See id. Additionally, his lumbar spine had been twisted in his effort to escape the power

door to avoid further injury. See id. According to Plaintiff, when he asked Dhillion why she shut

him in the door knowing he was disabled and it takes him longer to exit his cell, she responded

that he should not have pursued the September 21, 2021, wheelchair complaint and that he "better

watch himself."  Id.

   Plaintiff alleges these facts give rise to a retaliation claim under the First

Amendment.  See id.


## II.  DISCUSSION

   The Court finds that a number of Plaintiff's claims are cognizable and that a

number of them are not.  Specifically, the following claims are sufficient to proceed:

> (1) Plaintiff's medical deliberate indifference claim in Claim I that Defendant Rios knew a wheelchair was medically necessary and, nonetheless, ordered Plaintiff not to use it, causing Plaintiff to fall and hurt himself.

> (2) Plaintiff's medical deliberate indifference claim in Claim II that Defendant Reynolds knew the wheelchair was necessary and denied it.

> (3) Plaintiff's claim in Claim IV against Defendant Dhillion for retaliation arising from Plaintiff's allegations of Dhillion shutting the cell door on Plaintiff in response to Plaintiff having made grievances against him and other officers regarding the need for medical care, including the need for a wheelchair, a wheelchair pusher, and increased shower time due to his disability.

> (4) Plaintiff's claim in Claim IV against Defendant Stewart based on Plaintiff's allegations that Defendant Stewart knew about the use-of-force staff complaint that Plaintiff had tried to file against Dhillion for his conduct, but failed to alert the investigative unit so that video documentation could be made of Plaintiff's injuries.

> (5) Plaintiff's excessive force claim in Claim IV against Dhillion for allegedly crushing Plaintiff in a cell door.

   As discussed in more detail below, Plaintiff fails to state a claim in Claim III

against supervisory defendants Lynch and Stewart because Plaintiff's allegations are not specific

enough as to whether these defendants knew of constitutional violations against Plaintiff but

failed to prevent them.  The Court also finds that Plaintiff has failed to allege facts to establish a

causal link between Defendant Bivin and a constitutional violation.  Finally, the Court finds that

1   Plaintiff fails to state a claim for relief under the ADA.

2        **A.** <u>**Supervisory Liability**</u>

3        Supervisory personnel are generally not liable under § 1983 for the actions of their

4   employees.  <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

5   respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

6   violations of subordinates if the supervisor participated in or directed the violations.  <u>See</u> <u>id.</u>

7   Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation

8   of constitutional rights and the moving force behind a constitutional violation may be liable even

9   where such personnel do not overtly participate in the offensive act.  <u>See</u> <u>Redman v. Cnty of San</u>

10   <u>Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  A supervisory defendant may also be

11   liable where he or she knew of constitutional violations but failed to act to prevent them.  <u>See</u>

12   <u>Taylor</u>, 880 F.2d at 1045; <u>see also</u> <u>Starr v. Baca</u>, 633 F.3d 1191, 1209 (9th Cir. 2011).

13        When a defendant holds a supervisory position, the causal link between such

14   defendant and the claimed constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v.</u>

15   <u>Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir.

16   1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

17   civil rights violations are not sufficient.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th

18   Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

19   official's own individual actions, has violated the constitution."  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S.

20   662, 676 (2009).

21        Here, even though Warden Lynch and Associate Warder Stewart allegedly knew

22   about ongoing reprisals Plaintiff was experiencing due to filing grievances against staff and

23   medical personnel at the prison, they did not participate or direct the alleged violations.

24   Additionally, it is not clear from the complaint whether the supervisors knew of the constitutional

25   violations but failed to prevent them or were notified of them by Plaintiff after they had occurred.

26   Plaintiff will be given an opportunity to amend to clarify his allegations.

27   / / /

28   / / /

1          **B. Causal Link**

2                   To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual

3    connection or link between the actions of the named defendants and the alleged deprivations.  See

4    Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

5    person 'subjects' another to the deprivation of a constitutional right, within the meaning of

6    § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

7    an act which he is legally required to do that causes the deprivation of which complaint is made."

8    Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations

9    concerning the involvement of official personnel in civil rights violations are not sufficient.  See

10   Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth

11   specific facts as to each individual defendant's causal role in the alleged constitutional

12   deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

13                  Here, even though Officer Bivin is named as one of the defendants in the

14   complaint, there are no specific allegations tying him to any constitutional violations.

15   Specifically, Plaintiff only alleges that Bivin knew of his need to use the wheelchair but does not

16   allege that Bivin denied him the use of the wheelchair or knew that it had been denied by Rios or

17   Reynolds.  Hence, there is currently no viable claim stated against Defendant Bivin linking him to

18   an Eighth Amendment violation. Plaintiff will be provided an opportunity to amend consistent

19   with the principles outlined above.

20          **C. Title II of the ADA**

21                  Title II of the ADA covers state prison inmates.  Pennsylvania Dep't of Corr. v.

22   Yeskey, 524 U.S. 206, 213 (1998).  To present an ADA claim, an inmate must show: (1) they are

23   an individual with a disability; (2) they are qualified to participate in or receive the benefit of

24   some public entity's services, programs, or activities; (3) they were either excluded from

25   participation in or denied the benefits of the public entity's services, programs, or activities, or

26   was otherwise discriminated against by the public entity; and (4) such exclusion, denial of

27   benefits, or discrimination was by reason of their disability.  Simmons v. Navajo County, Ariz.,

28   609 F.3d 1011, 1021 (9th Cir. 2010) overruled in part on other grounds by Castro v. County of

7

1    Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

2            For the purposes of the ADA, a disability is a physical or mental impairment that

3    substantially limits one or more major life activities.  Weaving v. City of Hillsboro, 763 F.3d

4    1106, 1111 (9th Cir. 2014).  To qualify, a disability must limit the ability of an individual to

5    perform a major life activity as compared to most people in the general population.  See Shields

6    v. Credit One Bank, N.A., 32 F.4th 1218, 1226 (9th Cir. 2022).  "[M]ajor life activities include,

7    but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating,

8    sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

9    concentrating, thinking, communicating, and working."  Id. (citing 42 U.S.C. § 12102(2)(A)).

10           Here, although Plaintiff is an individual with a disability who has been previously

11   issued a wheelchair by the state due to his disability and he was allegedly denied access to the

12   wheelchair by Officers Reynolds and Rios, it is not clear whether the denial was in fact due to his

13   disability. That is, there are no allegations of discriminatory intent in the complaint. Plaintiff will

14   be given an opportunity to amend.

15

16                                    **III.  CONCLUSION**

17           Because it is possible that the deficiencies identified in this order may be cured by

18   amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d

19   1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an

20   amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258,

21   1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the

22   prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An

23   amended complaint must be complete in itself without reference to any prior pleading.  See id.

24           If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

25   conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See

26   Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

27   each named defendant is involved and must set forth some affirmative link or connection between

28   each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167

                                              8

1   (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

2          Because the complaint appears to otherwise state cognizable claims, if no amended

3   complaint is filed within the time allowed therefor, the Court will issue findings and

4   recommendations that the claims identified herein as defective be dismissed, as well as such

5   further orders as are necessary for service of process as to the cognizable claims.

6          Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a second amended

7   complaint within 30 days of the date of service of this order.

8

9   Dated:  August 15, 2024

10                                              _____
                                                DENNIS M. COTA
11                                              UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28