**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

LARRY WILLIAM CORTINAS,

    Plaintiff,

    v.

RIOS, et al.,

    Defendants.

No. 2:23-CV-0388-WBS-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendant's motion, ECF No. 28, to revoke Plaintiff's in forma pauperis Status.

**I. BACKGROUND**

On March 2, 2023, Plaintiff initiated this action with a pro se complaint. See ECF No. 1. When Plaintiff initiated the action, he filed a motion for leave to proceed in forma pauperis, which the Court granted. See ECF No. 9. The Court also directed partial monthly fee payments. See ECF No. 10. On July 25, 2023, the Court issued an order addressing the sufficiency of the original complaint, finding that the allegations were insufficient to proceed on all asserted claims. See ECF No. 12. The Court provided Plaintiff the opportunity to file a first amended complaint. See id.

1

Plaintiff filed his first amended complaint on September 18, 2023.  See ECF No. 16.  In addressing the sufficiency of the first amended complaint, the Court summarized Plaintiff's allegations as follows:

> Plaintiff continues to name the following as defendants in his first amended complaint: (1) Correctional Officer – Bivin; (2) Correctional Sergeant – Rios; (3) Correctional Officer – Reynolds; (4) Correctional Officer Dhillion; (5) Warden – Lynch; and (6) Associate Warden – Stewart.[1]  See ECF No. 16.  All defendants are alleged to have been prison officials at California State Prison – Sacramento in 2020 and 2021.  See id.  Plaintiff now presents four claims for relief.[2]
>
> Claim I
> On September 21, 2021, Plaintiff was on his way to a mandatory state-ordered court appearance.  See id. at 4.  Plaintiff was in his wheelchair when Sergeant Rios ordered him out of the wheelchair.  See id.  Plaintiff tried to explain that he could not walk far and needed his wheelchair.  See id.  However, this was in vain.  See id.  Plaintiff claims that both Bivin and Rios knew the wheelchair was issued to Plaintiff by the state due to lumbar and cervical disc damage.  See id.  Plaintiff claims that Bivin and Rios saw Plaintiff using the wheelchair for the entire year of 2021.  See id.
>
> Plaintiff claims that each week Bivin would inspect the wheelchair to ensure it was working properly.  See id.  Likewise, Sergeant Rios was aware that Plaintiff had opened several complaints over not being provided a pusher for his wheelchair.  See id.  On the day of the incident, Sergeant Rios ordered the inmate who was pushing Plaintiff in his wheelchair to his court hearing back to his cell.  See id.  He then told Plaintiff that he could either walk to court or refuse court.  See id.  Plaintiff claims he did his best to walk and arrived one hour late.  See id.  There, Correctional Officer Reynolds asked Plaintiff where his wheelchair was.  See id.  Plaintiff claims the wheelchair was a medically necessary device, and he was given no explanation why it was taken away.  See id.  As a result, he had to walk 100 yards to get to court.  See id.  He claims he fell on his way back and was transported to the hospital.  See id.
>
> Plaintiff alleges these facts show a violation of his rights under the Americans with Disabilities Act (ADA).  See id.
>
> Claim II
> Plaintiff next claims that on the same day – September 21, 2021 – Correctional Officer Reynolds refused to provide Plaintiff with a wheelchair after several requests even though he knew of his need for a wheelchair.  See id. at 5.  Plaintiff claims that Reynolds was the officer who previously transported him to see the neurosurgeon and he was present during his exam and discussion of his lumbar and cervical spine damage.  See id.  Plaintiff claims that Reynolds also knew that the wheelchair was a state-issued medical device necessary for safe mobility.  See id.  Plaintiff claims that Sergeant Reynolds told him that Sergeant Rios said "no" to his wheelchair request and that he should "man up" and walk back.  Id.  As alleged above, Plaintiff attempted to walk back and fell, sustaining injuries requiring transportation to the hospital.  See id.  As he was placed on a

---

[1] Lynch was not named in the original complaint.
[2] The original complaint presented three claims for relief.

2

gurney, Plaintiff was dropped on his head by correctional officers who carried him into the elevator, among them Officer Reynolds. See id.

Plaintiff alleges these facts give rise to a claim under the Eighth Amendment. See id.

### Claim III

Plaintiff claims that, from September 2020 until December 2021, he wrote Warden Lynch and Associate Warder Stewart about ongoing reprisals he was receiving due to filing grievances against staff and medical personnel at the prison. See id. at 6. The grievances were made against Officer Dhillion, Sergeant Rios, and Correctional Officer Bivin for ignoring his complaints for the need of medical care. See id. Additionally, Plaintiff made complaints for not being given a wheelchair pusher, lacking access to wheelchair ramps once they were removed from Unit 8 Section B, and the need for increase in shower time more than five minutes and a shower chair. See id. Over the period that Plaintiff made these complaints, he claims he was harassed for contacting San Quentin Prison Law Office and threatened at the hospital by unknown correctional officers. See id.

On September 21, 2021, while at the hospital, these unknown correctional officers took him out of sight and informed him that his property would be destroyed if he accepted medical treatment. See id. Plaintiff claims Doctor Wilson witnessed the encounter. See id. Plaintiff feared that their threats were serious, so he returned to the prison. See id. Plaintiff claims he went on three hunger strikes to draw attention to the situation. See id. He also claims that he wrote to Governor Newsom, but the letters were returned to the prison. See id.

Plaintiff alleges these facts give rise to a retaliation claim under the First Amendment. See id.

### Claim IV

Plaintiff claims that on or around November 10, 2021, Correction Officer Dhillion used the power door as a weapon against him. See id. at 7. Plaintiff claims that Officer Dhillion shut the door on him as he was exiting his cell in Unit 8 Section C to obtain his medication, crushing his shoulder and causing him to fall to the floor. See id. Plaintiff claims that when he tried to file a staff use-of-force complaint, he was denied by Sergeant Rios. See id. Plaintiff also approached Associate Warden Stewart regarding the situation but was told to "forget it," and that Stewart refused to alert the investigative unit so that Plaintiff could make a video documenting his injuries. Id. Plaintiff claims that both of his shoulders turned black and blue because of the injury. See id. Additionally, his lumbar spine had been twisted in his effort to escape the power door to avoid further injury. See id. According to Plaintiff, when he asked Dhillion why she shut him in the door knowing he was disabled and it takes him longer to exit his cell, she responded that he should not have pursued the September 21, 2021, wheelchair complaint and that he "better watch himself." Id.

Plaintiff alleges these facts give rise to a retaliation claim under the First Amendment. See id.

ECF No. 17, pgs. 2-5.

///

///

The Court found that the following claims were sufficient to proceed to service:

>(1) Plaintiff's medical deliberate indifference claim in Claim I that Defendant Rios knew a wheelchair was medically necessary and, nonetheless, ordered Plaintiff not to use it, causing Plaintiff to fall and hurt himself.
>
>(2) Plaintiff's medical deliberate indifference claim in Claim II that Defendant Reynolds knew the wheelchair was necessary and denied it.
>
>(3) Plaintiff's claim in Claim IV against Defendant Dhillion for retaliation arising from Plaintiff's allegations of Dhillion shutting the cell door on Plaintiff in response to Plaintiff having made grievances against him and other officers regarding the need for medical care, including the need for a wheelchair, a wheelchair pusher, and increased shower time due to his disability.
>
>(4) Plaintiff's claim in Claim IV against Defendant Stewart based on Plaintiff's allegations that Defendant Stewart knew about the use-of-force staff complaint that Plaintiff had tried to file against Dhillion for his conduct but failed to alert the investigative unit so that video documentation could be made of Plaintiff's injuries.
>
>(5) Plaintiff's excessive force claim in Claim IV against Dhillion for allegedly crushing Plaintiff in a cell door.

See ECF No. 17, pg. 5.

The Court also found that Plaintiff failed to state a claim in Claim III against supervisory defendants Lynch and Stewart and that Plaintiff had not pleaded any facts to establish a causal link between Defendant Biven and a constitutional violation. See id. at 5-6. The Court also determined that Plaintiff failed to state any claims for relief under the Americans with Disabilities Act. See id. at 6. Plaintiff was provided an opportunity to file a second amended complaint and advised that, if he did not do so within the time provided therefor, the action would proceed on the first amended complaint as to those claims identified as cognizable and that all other claims and defendants would be dismissed. See id. at 8-9. As of November 18, 2024, Plaintiff had not filed a second amended complaint and the Court directed service of the first amended complaint on Defendants Rios, Reynolds, Dhillion, and Stewart on Claim I, II, and IV. See ECF No. 18. Concurrently, the Court also issued findings and recommendations for dismissal of Claim III and Defendant Biven consistent with the prior screening order. See ECF No. 21. The findings and recommendations were adopted in full by the District Judge on January 17, 2025. See ECF No. 23.

1  On February 21, 2025, Defendants filed a motion for extension of time to file a
2  response to the First Amended Complaint, which was granted. See ECF Nos. 25 and 26. On
3  March 24, 2025, Defendants filed the pending motion to revoke Plaintiff's in forma pauperis
4  status and, on March 25, 2025. See ECF Nos. 28. On April 17, 2025, Plaintiff filed a response to
5  Defendants' motion. See ECF No. 31. Defendants filed a reply on April 24, 2025. See ECF No.
6  32.

## II. DISCUSSION

In the pending motion, Defendants argue that Plaintiff is not entitled to proceed in forma pauperis in this action because he has had three or more prior actions dismissed for failure to state a claim or as frivolous and the current action does not involve a claim of imminent danger. See ECF No. 28. For the reasons discussed below, the Court agrees.

The Prison Litigation Reform Act's "three strikes" provision, found at 28 U.S.C. § 1915(g), provides as follows:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained . . ., brought an action . . . in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id.

Thus, when a prisoner plaintiff has had three or more prior actions dismissed for one of the reasons set forth in the statute, such "strikes" preclude the prisoner from proceeding in forma pauperis unless the imminent danger exception applies. The alleged imminent danger must exist at the time the complaint is filed. See Andrews v. Cervantes, 493 F.3d 1047, 1052 (9th Cir. 2007). A prisoner may meet the imminent danger requirement by alleging that prison officials continue with a practice that has injured him or others similarly situated in the past, or that there is a continuing effect resulting from such a practice. See Williams v. Paramo, 775 F.3d 1182, 1190 (9th Cir. 2014).

///

A. **Prior Strikes**

In their motion, Defendants assert the following cases constitute prior "strikes" which preclude Plaintiff from proceeding in forma pauperis in the instant action:

<u>Cortinas v. Gillingham (Cortinas I)</u>, No. 5:99-cv-20730 (N.D. Cal.).

<u>Cortinas v. Scalia (Cortinas II)</u>, No. 1:14-cv-02015 (E.D. Cal.).

<u>Cortinas v. Gill (Cortinas III)</u>, No. 1:18-cv-00515 (E.D. Cal.).

<u>Cortinas v. Gates (Cortinas IV)</u>, No. 1:19-cv-01709 (E.D. Cal.).

<u>Cortinas v. Allison (Cortinas V)</u>, No. 1:19-cv-01244 (E.D. Cal.).

<u>Cortinas v. Baughman (Cortinas VI)</u>, No. 2:19-cv-01712 (E.D. Cal.).

<u>Cortinas v. Soltanian (Cortinas VII)</u>, No. 2:20-cv-01071 (E.D. Cal.).

See ECF No. 28, pgs. 7-11. Defendants have provided the Court with relevant portions of the record for each of these cases, which the Court may judicially notice. See Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967); see also ECF No. 28-2 (Defendants' Request for Judicial Notice). The Court agrees with Defendants that these cases each constitute a prior "strike" under the PLRA.

1. *Cortinas I*

Plaintiff incurred his first strike here because the court granted defendant's motion to dismiss, and the case was dismissed for failure to state a claim. See ECF No. 28, pg. 7. The Court finds that the dismissal of <u>Cortinas I</u> constitutes a prior "strike."

2. *Cortinas II*

Plaintiff incurred his second strike here because his own allegations affirmatively demonstrated that he was not entitled to relief, and he therefore failed to state a claim upon which relief could be granted. See id at 7-8. The Court finds that the dismissal of <u>Cortinas II</u> constitutes a prior "strike."

3. *Cortinas III*

Plaintiff incurred his third strike here because the court granted defendant's motion to dismiss. On September 22, 2021, the case was dismissed because Plaintiff's failure to state a claim. See id at 8. The Court finds that the dismissal of <u>Cortinas III</u> constitutes a prior "strike."

        4.      *Cortinas IV*

Plaintiff incurred his fourth strike here because the case was dismissed during the screening process due to Plaintiff's failure to state a claim on December 7, 2020. See id. The Court finds that the dismissal of Cortinas IV constitutes a prior "strike."

        5.      *Cortinas V*

Plaintiff incurred his fifth strike here because Plaintiff voluntarily dismissed the case after the Court concluded Plaintiff's failed to state a claim during screening process on March 5, 2020. See id at 9. The Court finds that the dismissal of Cortinas V constitutes a prior "strike."

        6.      *Cortinas VI*

Plaintiff incurred his sixth strike here because the case was dismissed during the screening process due to Plaintiff's failure to state a claim on September 9, 2020. See id at 10. The Court finds that the dismissal of Cortinas VI constitutes a prior "strike."

        7.      *Cortinas VII*

Plaintiff incurred his seventh strike here because the case was dismissed during the screening process due to Plaintiff's failed to state a claim on June 5, 2020. See id. The Court finds that the dismissal of Cortinas VI constitutes a prior "strike."

    B.    **Imminent Danger Exception**

Defendants contend that neither the original complaint nor the operative first amended complaint in the action indicate that Plaintiff was under imminent danger of serious physical injury at the time he initiated this action. See ECF Nos. 1 and 16. Specifically, this action involves Plaintiff's allegations of denial of a wheelchair, an excessive force claim, and a retaliation claim. See ECF No. 16. The Court agrees with Defendants that no remaining claims suggest that Plaintiff was under imminent danger of serious injury at the time the action was filed.

///
///
///
///

                    *1.*     <u>Claim I</u>

Plaintiff' complaint does not establish the imminent danger for the first claim. Plaintiff alleges Defendants deprived him of his rights by denying him use of a wheelchair on a single day on September 21, 2021. <u>See</u> ECF No. 1 at 4; <u>also see</u> ECF No. 16 at 4-5. This claim does not suggest the possibility of imminent danger or serious injury.

                    *2.*     <u>Claim II</u>

Plaintiff' complaint does not establish the imminent danger for the second claim. Plaintiff alleges an excessive force claim arising from a single incident on November 8, 2021, which involved Officer Dhillion using the cell door as a weapon. <u>See</u> ECF No. 16 at 7. Plaintiff does not allege a continuing practice or effect of prior misconduct.

                    *3.*     <u>Claim III</u>

In Claim III, Plaintiff alleged informing Lynch and Stewart of ongoing retaliation by correctional officers. <u>See</u> ECF No. 16. Because Plaintiff does not allege what form such retaliation took, the Court cannot find that this claim establishes the possibility of irreparable injury as of the date the first amended complaint was filed.

                    *4.*     <u>Claim IV</u>

Plaintiff' complaint does not establish the imminent danger for the third claim. Plaintiff originally alleged a retaliation claim against Assistant Warden Stewart related to his alleged cancellation of surgery planned for January 7, 2022. <u>See</u> EFC No. 1 at 6. Additionally, Plaintiff alleged retaliation by Stewart related his alleged refusal to investigate the cell door incident. <u>See</u> EFC No. 16 at 7. Plaintiff does not specify what form the alleged retaliation took, and the Court cannot find that such alleged retaliation established a possibility of imminent danger at the time the first amended complaint was filed.

/ / /

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendants' request for judicial notice, ECF No. 28-2, be GRANTED.
2. Defendants' motion, ECF No. 28, be GRANTED.
3. Plaintiff be required to pay the filing fees for this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 9, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9